UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Darrell Taylor,

    Petitioner,

v.

Warden B.R. Jett,

    Respondent.

Civ. No. 09-1632 (RHK/JJK)

**REPORT AND RECOMMENDATION**

---

Darrell Taylor, #07346-424, FMC, P.O. Box 4000, Rochester, MN 55903-4000, *pro se*.

D. Gerald Wilhelm, Esq., and Gregory G. Brooker, Esq., Assistant United States Attorneys, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Petitioner's Petition for Habeas Corpus relief be denied.

## BACKGROUND

Petitioner is serving an aggregated 181-month sentence, followed by three years of supervised release, imposed by the United States District Court for the

Northern District of Illinois following a conviction for Bank Robbery and Use of a Firearm during a crime of violence, in violation of 18 U.S.C. §§ 2113(a) and 924(c).  He has a projected release date of May 14, 2010, pursuant to Good Conduct Time ("GCT") release.  In July 2008, the Bureau of Prisons ("BOP") conducted a review to determine whether Petitioner should be placed in a residential-reentry center at the end of his prison term.

     The BOP unit team recommended a 150-to-180-day placement in a halfway house.  The BOP staff based their determination for this 150-to-180-day-halfway-house placement on the individual factors outlined in the Second Chance Act of 2007 ("SCA"), 18 U.S.C. § 3621(b).  They determined that Petitioner had good family support, a residence, general job skills, and life skills.  However, they also considered Petitioner's history of violence, which included him taking a teller hostage during a bank robbery, as well as his disciplinary history, which includes incident reports for possessing intoxicants, possessing a dangerous weapon, refusing orders, and interfering with security devices.  In addition, the BOP staff noted that there were no recommendations by the sentencing court concerning halfway-house placement at the time of sentencing.  Based on their "careful consideration" of all of this information, the BOP unit team recommended a Residential Reentry Center ("RRC") placement of 150-180 days as the "sufficient duration to provide the greatest likelihood of successful

reintegration into the community." (Doc. No. 7, Decl. of Ann C. Kinyon ¶ 3, Attach. B.)

Petitioner contends that he should have been given a 12-month period of placement in the residential-reentry center, not a period of only 150-180 days. Following the unit team's recommendation in July 2008, on March 19, 2009, Petitioner filed a request for review of his case, and on May 29, 2009, the regional office of the BOP rejected his appeal. Petitioner did not file an appeal with the central office of the BOP, which would have been the last step in the three-part administrative-remedy program of the BOP designed to address a federal inmate's concerns regarding any aspect of his or her confinement. On June 26, 2009, Petitioner filed this Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, asking the Court to direct the BOP to reconsider the duration of his designation to a Residential Reentry Center.

## DISCUSSION

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

RRC assignments are governed by 18 U.S.C. § 3624(c)(1), which provides

as follows:

> The Director of the [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Congress has granted the BOP not only the discretion to determine where to house an inmate, but also the discretion to determine, through the individualized consideration required by the SCA, the length of an inmates RRC placement. *See id.* § 3624(c)(6) (requiring the BOP to issue new regulations designed to ensure that RRC assignments are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on *an individual basis*; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community") (emphasis added). Further, the statute sets the maximum amount of time that a prisoner can spend at a RRC as not more than 12 months, but does not set any minimum amount of time that a prisoner must spend at a RRC. *Id.* § 3624(c)(1); *see also Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (quoting § 3624(c)(1)); *Stewart v. Cruz*, No. 08-4380 (ADM/RLE), 2008 WL 3893600, at *2 (D. Minn. Aug. 20, 2008) ("[T]he statute itself clearly indicates, on its face, that the BOP is to determine, on an **individual basis**, how much time each Federal Prisoner should spend at an

RRC. The statute sets a maximum amount of time that a prisoner can spend at an RRC—not more than twelve (12) months—but the statute does not set any minimum amount of time that a prisoner must spend at an RRC"). And neither the SCA nor any other statutory authority requires transfer of an inmate to a RRC. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004) ("18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system . . . . [T]he obligation is qualified by the phrase "to the extent practicable."); *see also* 18 U.S.C. § 3624(c)(4) (providing that the statute does not limit or restrict the authority of the BOP under 18 U.S.C. § 3621(b), to designate the place of the prisoner's imprisonment).

The crux of Petitioner's argument is that the BOP has violated the SCA because the BOP has not adopted procedures required by the Act. Specifically, Petitioner contends that the BOP's April 14, 2008 Memorandum, entitled *Memorandum for Chief Executive Officers* ("April 2008 Memo"), which implemented the requirements of the SCA, violated the requirements of the Act. However, this Court concludes that the April 2008 Memo, and subsequent actions of the BOP, conform to the requirements of the SCA.

The April 2008 Memo implemented the requirements of the SCA that became immediately effective in April 2008, when the SCA was signed into law.

(*See* Doc. No. 8, Decl. of Bernetta Miller ("Miller Decl.") ¶ 2, Ex. A.); *see also Miller*, 527 F.3d at 756 (noting the interim guidance issued by the BOP to implement the SCA). The Memo specifically instructed BOP staff that the SCA increases RRC placements to a maximum of twelve months, that RRC placement determinations are to be made on an individual basis according to new criteria in the SCA and criteria set forth at 18 U.S.C. § 3621(b), and that sentencing court orders, recommendations, or requests concerning an inmate's RRC placement are not binding. (*See* Miller Decl., Ex. A at 2.) It specifically directs BOP staff to review inmates for RRC placement 17-19 months prior to their projected release dates and sets forth the five factors from 18 U.S.C. § 3621(b) that must be considered in determining the length of RRC placements. (*Id.* at 3.)

The April 2008 Memo also instructs BOP staff that the SCA requires them "to ensure that each pre-release RRC placement decision is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community'" and states that this means "Bureau staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of twelve months pre-release RRC placement." (*Id.* at 4 (emphasis in original).) In addition, the April 2008 Memo states:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates'

6

>pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(*Id.*)

The BOP subsequently published, on October 21, 2008, an interim rule with a request for comments. *See* 73 Fed. Reg. 62,440 (Oct. 21, 2008) (codified at 28 C.F.R. §§ 570.20-570.22). The rule was posted for the inmate population. The interim rule, however, does not include the language of the April 14, 2008 Memorandum with regard to placements of greater than six months. *See Strong v. Schultz*, 599 F. Supp. 2d 556, 562-63 (D. N.J. 2009) ("[O]n October 21, 2008, the BOP adopted regulations which do not contain the limiting criteria of the April 14, 2008[] Memorandum . . . . Unlike the April 14, 2008[] Memorandum, the regulation entitled "Designation" does not limit the discretion of staff to designate inmates to a CCC for more than six months[.]").

Then, on November 14, 2008, the BOP issued another guidance memo, *Inmates Requests for Transfer to Residential Reentry Center* ("Nov. 2008 Memo"), which provides that the April 14, 2008, guidance memorandum remains in full effect. (Miller Decl. ¶ 5, Ex. D at 3.) The Nov. 14, 2008 Memo continues to apply long-standing BOP policy by stating: "An RRC placement beyond six months should only occur when there are unusual or extraordinary

7

circumstances justifying such placement, and the Regional Director concurs." (*Id.*)  The above-described BOP procedures comply with the requirements of the SCA.  *See Miller*, 527 F.3d at 757 (8th Cir. 2008) ("The 'extraordinary justification' requirement does give weight to the time remaining on the inmate's sentence as a factor in the placement analysis, but we do not think this is inconsistent with § 3621(b).").

In evaluating Petitioner for RRC placement, the BOP considered the criteria set forth in the SCA.  *See* 18 U.S.C. § 3621(b); *see also Miller*, 527 F.3d at 758 (stating that the BOP need conduct a "good faith" analysis of these criteria, but that "the statute does not require the BOP to provide prisoners with a detailed statutory analysis").  Because the BOP made its recommendation for 150-180 days of RRC placement for Petitioner after conducting the required individualized assessment under the SCA, the RRC-placement recommendation by BOP staff was allowable.  Therefore, Petitioner's Petition should be denied.[1]

**RECOMMENDATION**

Based on the above, and on the files, records, and proceedings herein,

---

[1] The Petitioner concedes that he has not exhausted his administrative remedies with the BOP as to the claims presented here, but he contends that he should not have to exhaust those remedies before seeking habeas corpus relief because there was not enough time to do so.  Because this Court concludes that Petitioner's claim fails on the merits, this Court does not address the failure-to-exhaust issue.

8

**IT IS HEREBY RECOMMENDED** that:

    1.    Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1), be **DENIED**; and

    2.    This action be **DISMISSED WITH PREJUDICE**.


Date: January 15, 2010

                                      <u>*s/ Jeffrey J. Keyes*</u>
                                      JEFFREY J. KEYES
                                      United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 29, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.